Judge Robertson
delivered the opinion of the court.
This is an action of debt, by John Anderson vs. William T. Barry, and Thomas Triplett, on a Supersedeas bond, executed in 1623, in the penalty of $>2,500, for superseding a judgment in the Bath circuit court, by Anderson vs. John T. Mason, Richard M. Johnson, and Cave Johnson, for $1110, damages, and the costs of the suit.
The defendants filed five pleas, in substance, as follows:.
1st. That the judgment Was affirmed in this court, on a record, different from that, on which the superse-deas was granted.
2d. The sarhe matter, but stated more compre^ liensivelv.
*266 3d. That executions had issued on the original judgment, and on that of this court, for damages, after the affirmance, and before the impetration of this writ, which had been replevied.
4th. That the debt for which the original judgment was rendered, had been paid before the institution of the suit, by Anderson vs. Mason, &c. and that the -costs and damages in this court, had been paid before the date of this writ.
5th. That there was no such judgment of thiscouyt, affirming the original judgment, as was alleged in the declaration.
Isssue was taken, to the court, on the last plea.
Demurrers were sustained by the court, to the 1st 2d and 4th pleas.
To the 3d plea, there was a replication, in substance, that the replevin bond, taken on the execution on the original judgment, was signed or acknowledged by Mason, or R. M. Johnson, and that the execution, for the costs and damages was levied on property of Cave Johnson, which sold only for $20, in bank paper.
A demurrer to this replication, was not disposed of, so far as the record shows.
Leave being asked, to file additional pleas, and opposed, was granted; and thereupon, pleas, No. 6,7, 8, 9 and 10, were filed,in substance as follows:
6th. That an injunction had been obtained, by order of the judge of the Bath circuit court, restraining,the said judgmentsat law,” “and from all proceedings, to collect the same.” That an injunction bond, had been executed. The subpeena, with injunction issued, and served on Anderson.
7th. That the judgment of the circuit court had been amended, on Anderson’s motion, after the supersedeas, bond was executed, and before the judment of affirmance by this court.
8th. That after the l}ond was executed, and the record filed, Ihe latter having bepn taken forcibly, by FrancisP. Blair, into his custody, Anderson filed ano* *267 iher, which, in the mean time, had been materially amended and enlarged, and on which the opinion of this court was pronounced.
9th. Substantially the 8th,difFeringonly by the addi» tional allegation, that Anderson filed the record fraudulently.
10th. That no supersedeas ever issued, to restrain Anderson from the enforcement of his judgment by execution.
Demurrers were sustained to the 7th, 8th, 9th, and 10th pleas; but overruled to the 6th. Whereupon, Anderson refusing to reply, judgment was rendered in favour of Barry and Triplett, in bar of the 'action. To reverse which, this writ of error, with a superse-deas, isprosecuted.
Two errors are assigned.
1 st. That the court erred in permitting pleas, 6, 7, 8,9 and 10, to be filed.
2d. That it erred in overruling the demurrer to the 6th plea.
As to the 1st error, it is our opinion, that it is insufficient for the reversal of the judgment. The filing of the additional pleas, was not a matter of right, because, although, by statute, a defendant is allowed to file as many pleas, both of law and fact, as he may, think proper to offer, provided they be good; yet he cannot claim this asa matter of right, unless he offer to file them all at the same time. He cannot have a legal right, to embarrass the plaintiff, and procrastinate a trial, by vexaciously filing pleas, uad libitum.” The court has a superintending control, over the pleadings, in exercising which, pleas will be permitted or rejected, by its sound legal discretion, as they may seem necessary, or otherwise, under the circumstances of the casé, to the ends of justice, and consistent with the rights and duties of the parties; and in >the exercise of this discretion, the circuit court will never be controlled by this, unless it shall have obviously abused or perverted its power, to the unreasonable advantage of one party, and to the prejudice of the other.
Demurrer (o plea or replication, opens all precedent pleadings.
The court might in this case, have refused leave to file the additional pleas, and the defendants below, would have had no cause of complaint. It would have been discreet and proper, to have denied leave, if the pleas be insufficient; to bar the action. Walton vs. Kindred, V. Mon. 391-2. But this court will not reverse the judgment, for permitting the pleas to be filed, although they may be insufficient, because, the regular and appropriate mode of taking advantage of a defective plea, is by demurrer. Whether the pleas be good or bad, in substance, is not decisive of the question, whether the court shall grant or withhold leave to file them. A prudent judge would never permit an insufficient plea, to be filed, when he has the discretion to reject it. But as the court, when the defendant has a legal right to plead., will not refuse to permit him, to file a plea, affirmative in kind, and properly presented, merely, because, on demurrer, it would beheld insufficient, but should, as a general rule of practice, postpone a decision on its merits, until it should be exapted by demurrer.
Therefore, when the court having the discretion to admit, or refuse a plea, shall suffer one to be filed, which would be bad on demurrer, this court will not reverse, solely on the ground of the insufficiency of the plea, but will leave the adversary party, lo his demurrer.
On the 2d error, many considerations present themselvps. Preliminary, to a decision on the sufficiency of the 6th plea, it will be proper to ascertain, whether the plaintiff in error, has in any antecedent stage of the pleadings, committed any blunder, of W'hich the defendants could take advantage, on his demurrer, to their 6th plea.
It is a general rule, that a demurrer to a plea, or replication, opens all the prectedent pleadings, and presents their merits, for décision by the court; and that if the demurrant has been guilty of any slip, which could have been taken advantage of on demurrer, his demurrer will be overruled, however well founded, it may otherwise be. Beauchamp vs. Mudd, Hardin, 164; Slack vs. Price, I. Bibb, 272; Jones vs. Gruget, Ib. 447; Mitchell vs. Gregory, Ib. *269 449; Bodine vs. Wade, Ib. 459; Guthrie vs. Wickliffe, III. Bibb, 81; Joice vs. Handley, Ib, 225; Elliott vs. Fowler, I. Littell’s Reports, 202; I. Sanders, 33; Tidd’sPra. 829. The United States vs. Arthur and Patterson, V. Cranch, 257.
The objection to the declaration in this case, is, that it does not make profert of the supersedeas bond; but only recites the substance of it, and then alleges, as an excuse for not proffe.ring it, that it was on file ip this office.
Wbether,if this be a substantial defect in the declaration, it is not cured by the pleas, and the issue made up, would, if it were material, to decide it, be a question, somewhat curious and vexacious. There may be many defects in a declaration, which will be cured by a plea. There are others, which cannpt be, It would now be unprofitable, to attempt an analysis, or even an enumeration of the cases of the one class or the other. We could not admit, that a demurrer to a replication, necessarily exposes the whole declaration, under ail circumstances, to the scrutiny of the court.
There might be defects in a declaration, so effectually cured by the plea, as to exempt them from the reaction of a demurrer, to a replication to the plea. This seems to be a decision of reason, and we are inclined to think, that it is fortified by some of the cases (if not all) which have been cited to shew, that a demurrer opens the whole record.
In Elliott vs. Fowler,I. Littell, 202, the court says, “For it is a settled rule, that if it appear from any cause in the record, that the plaintiff in error, ought not to have judgment, or that, if he had obtained one, it must have been reversed, on the writ of his adversary, he cannot maintain a writ of error.”
In Joice vs. Handley, III. Bibb, 226; the court says, “a writ of error, like a demurrer, to any part of the pleadings, brings the whole record before the court; and if, from the whole case, the plaintiff does not shew himself, entitled to recover, he ought not to have a judgment in his favor.”
*270 In Peebles vs. Stephens, I. Bibb, 501; the court says, “the demurrer brings before the court, the . whole state of the pleadings, at least.so far as is necessary ¿for the attainment of the veryfight of the case.'’'’
“A demurrer would authorize the court, to give judgment, according to the right of the case, and not according to the replication only.” Jones vs. Gruget, I. Bibb, 449.
“All the pleadings being brought before the court by general demurrer, the court might have given judgment, according to the right of tbe case,, upon the pleadings.” Mitchell vs. Gregory, I. Bibb, 452.
It would seem, from the rule thus laid down in these leading cases, that a demurrer toa replication, will not overreach a defect in the declaration, if the omission and the plea, be of such a character, that the latter supplies or cures the former, or if the defect in the plea, be not a consequence of that in the declaration.
We would be inclined to the opinion, that if the omission to make profert of the bond in this case, be a substantial defect in the declaration, the issue and pleas, are of such a character, as to supply the omission, and cure the defect.
However, we shall not decide this point, becausé we do not consider its decision now necessary, believing as we do, that the declaration is good, for the following reasons:
1st. The bond being, bylaw, filed in this court, it was not necessary to make profert of it. A party is not bound to make profert of a deed, to the custody of which he has not an exclusive right. If the deed be filed in a suit in another court, it is not necessary to make profert of it, because it is in the custody of the law. V. Coke, 74 b, 76 a; Moore’s executors vs. Paul, II. Bibb, 330.
The assignee of a bond by commissioners of a bankrupt, is not required to make profert of the bond, because it was transferred to him by the act of the law, and he had no means to obtain the original. Ba. Ab. tit. pleading, I. 12.
*271 A guardian’s bond, an appeal bond, a supersedeas bond and others of the same kind, are approved by 'the court, or the clerk of the court* and deposited the archives of the coiirt, or of the clerk’s office. Profert of such bonds, we cannot consider necessary in a declaration, by the person for whose benefit they are executed. They seem to us to be in the custody of the law; that they are intended to be preserved, in order, that they may be accessible by either party to them, and as much so by the one as the other. The chief object of profert, is to enable the obligor to see the bond and take a ropy of it, if he choose to do so. In this case, the defendants who executed the super-sedeas bond, knew that it Was deposited with the clerk, who approved them as sureties, and received their acknowledgement. They had access to the bond in the clerk’s office. The plaintiff had no agency in accepting the security, nor was the bond ever delivered to him.
2d. If this bond be like all other specialties, which are the basis of actions, and there be no more reason for dispensing with the profert of the one kind than of the other, the omission of profert is cause of special demurrer only, and therefore, in Kentucky, is immaterial.
We know that, in some of the elementary books on pleading, it is stated that want of profert of a specialty, which is the foundation of the action, is a substantial defect, of which advantage may be taken, on general demurrer, unless the character or condition of ’the writing be such as to furnish, according to some of the authorities, supra, a sufficient excuse for the omission. We know, too, that such is the doctrine reported in Leyfield’s case, X. Coke, 94-5; and that this court, in the case of Metcalfe vs. Standeford, I. Bibb, 521, has decided on the authority of this case in Coke, that want of profert is cause of general demurrer.
But in the most approved treatise on pleading, it is laid down as unquestioned law, that Hhe omission of profert, when necessary, can only be taken advantage of by special demurrer.” I. Chitty, 350. If this discrepancy, in these respectable authorities, cannot be re- *272 eonciled or satisfactorily accounted for, we shall feel bound to regard the opinion, in II. Bibb, as containing , the true doctrine.
The authority of Coke is unquestionable; and if it needed any support, a host of subsidiary cases could be cited to show that, when Leyfield’s Case was tried, the law of England was without doubt, as reported by Coke, in that case. Such Ivas the undeniable doctrine of the English courts, before and until sometime after the settlement of the American colonies. And consequently, the case of Metcalfe vs. Standeford, must contain the true law of this state, unless some statutory provision of this country has introduced among us, the law as stated in Chitty. That this has been done, we will now endeavor tó show.
By a statute the 16th. 17th. Charles the II. Cha. 8, it was enacted, “that after verdict, judgment shall not be staid or reversed for default, of alleging the bringing into court any bond, bill, or other deéd mentioned in the pleadings, or of any letters testamentary or of administration.” Ever since this statute, pro-fert of a specialty, in the declaration, has been held to be only matter of form; Salk. 497; VI. Mod. 135; By another statute of England, 4th. and 5th. Anne, Cha. 16, it was enacted, among other things, that, “no advantage or exceptions shall be taken for want of a profert in Cur. &c.; but the court shall give judgment according to the very right of the cause, without regarding any such omission and defect, except the same be specially and particularly set doran and shown, for cause of demurrer*”
The statute of Anne must be more comprehensive than that of Charles, otherwise it was supererrogation. The statute of Charles ivas one of Jeofails, the letter of which cured a want of profert, after verdict. But this statute did not, in terms, declare that such omission was only a matter of form. That it was so, was the interpretation of the spirit of the statute, by the courts. This construction, was no doubt questioned, and for good reason; and, therefore, the statute of Anne, recapitulating the substance of that of Charles, expressly legalizes the judicial *273 construction, by declaring that advantage shall not be taken of a lack of profert; except by special demurrer.
We should say, contrary to the exposition of it, by the English judges, that the statute of Charles, like our statute of jeofails, of 1796, cured defects in pleading, only by a verdict or judgment on nihil dicit, &c. is specified in each, and that it had not the effect of converting, before verdict or such judgment substance into form; or of preventing a general demurrer to a declaration for want of profert. By out statute of jeofails, many substantial defects in a declaration, which may be taken advantage of by general demuri'er, are remedied after verdict. But still for such errors, there may be a general demurrer. If a patty demur, his demurrer must be sustained. But if he fail to demur, and a verdict be rendered against him, he may not object to the insufficiency of the declaration. It may then be, and certainly will be, in all the cases provided for by the statute, too late. And this, we would have supposed, should have been the construction of the statute of Charles. But the judges of England thought and decided otherwise. And to establish and enforce their exposition, must have been the only motive for passing the act of Anne. Since this latter statute, more especially, there has been no diversity of opinion on the effect of omitting profert; and hence the doctrine, so explicitly and confidently affirmed by Chitty¿ When he wrote, it was not doubted by any one, that, in England, profert was only matter of form, of which advantage Could be sought only by special demurrer.
Coke, when he reported the case of Leyfield, also stated the law of England correctly. At that time the statutes of Charles and of Anne not having been enacted, the law certainly was, not only, that profert was essential, but that its omission, was ground of general demurrer, and not cured by verdict. If this were not then so, there would have been no necessity for these statutory amendments of the law.
This court, therefore, in the case in Bibb, decided the law of this state correctly, unless the statutes of Charles and Anne have been adopted as the law here* *274 as well as of England. If they have been so adopted, all must concede, that, here as well as there, the law is as stated by Chitty.
By the constitulion of Kentucky, Article 6th, Section 8, it is declared,.that “all laws which, on'the first day of June, 1792, were in force, in the state of Virginia, and which are of a general nature, and not peculiar to.that state, and not repugnant to this constitution, nor to the laws which have been enacted by the legislature of this commonwealth, shall be enforced within the same, until they shall be altered or repealed by the general assembly.”
By the act of Virginia, of 1753, it is declared? “that for the prevention of delay, by arresting judgments and vexatious appeals, the several acts of parliament, commonly called the statutes of Jeofails, now in force and of use in England, shall be, and are hereby declared to be, or as much thereof, as relates to mispleading, jeofail and amendment, in full force in this dominion, also.” At this lime there were twelve statutes of jeojctils in force in England. That of 14. E. 3 c. 6, is the first, and that of 4. 5. Anne, the last in the series. They were all called statutes of amendment and Jeofails.
We have been unable to ascertain any reason for supposing that the statutes of Charles and Anne were not in force in England in 1753. We cannot doubt that they were then in force. They were in force when Chitty wrote, which was long since ’53, and consequently they had not been repealed when the Virginia act passed, or they would not be referred to in Salkeid, in Bacon and Chitty, as the authority for the modern doctrine of the immateriality'of proferí.
It is our opinion, that the statutes of Charles and of Anne, were both virtually re-enaeted and adopted in Virginia, as the law of that state, by the act of 1753. They are both statutes of jeofails. The statute of Anne does not differ, materially, from that of Charles, except that it supplies, by express words, what, that was only interpreted, by a very latitudinary construction, to mean, to-wit: that want of profert should be cause of only special demurrer. This last *275 provision, peculiar to the act of Anne, might be supposed not to be an integral part of a statute of jeofails, and, therefore, not embraced by the act of 1753. But it is a part of the statute of Anne, and is not only a constituent member of the section, but of the sentence which has been quoted, and which no one will hesitate to admit, is a statutory provision of amendment and jeofail. The whole section is adopted by the Virginia act, because the whole is a statute of jeofail, and the whole being composed of all its parts, ehch part, must be as much included, as any other. Besides, the expressions under consideration, if they could not properly be considered as embraced by the denomination, Hhe statutes of jeofails,” are certainly intended as a provision for “amendment;” and the act of 1753, adopts so much of the statutes of jeofails, (in other words, “amendment and jeofails,”) “as relates to mispleading, jeofail and amendment.” Being a part of the statute of jeofails of Anne, and inserted expressly for “amendment” of the law in relation to “mispleading,” we cannot resist the conclusion, that it is as much embraced by the Virginia act, as any other parts of the same sentence, or section, or act. And that it is, has been decided by this court, in the case of Walton vs. Kindred’s administrator, V. Monroe, 388; in which it is declared that,incon-sequence of the statute of Anne, and that of Virginia of 1753, an omission to make profert of letters testamentary, is now, in Kentucky, as well as in England, cause only of special demurrer.
Before the statute of Anne, it was as necessary in England to make profert of letters testamentary, as of a deed or other specialty. The statutes of Charles and Anne, both mention deeds and letters testamentary, and place them on the same footing. If, therefore, the one is transformed, from substance into shadow, by the statute of Anne, so must the other be, undeniably and inevitably.
Moreover, the construction and the practical effect of these statutes, being well known and established in England, when the het of Virginia, of 1753 was passed, the presumption is strong, and is legal, that they were adopted with this construction of them, and to have the same effect in Virginia as in England,
?ro/eri°fn°dp duration, ig6" cause only of munwmid special de-, ’ murrers have cd*51?)Ílb?lisí)" of IsTl.*ea0t
These statutes have never been repealed by the legislature of this state. Our statute of jeofails of 1796, does not contain the expressions in that gf Anne, which, according to our construction of the latter statute, are thóse alone which prevent a general demurrer for want of proferí. But there is no incongruity between this part of the statute of Anne and the act of 1796; and therefore, the latter does not. repeal the former, by construction, according to any principles of right, reason, or any established rules of law.
We are, therefore, now brought to the conclusion, in ^yis state, an omission to make proferí in a declaration of a deed, which is the foundation of the action, is no cause for a general demurrer. It isa ^^ect onty ln f°rm; and as the act of 1811 cures all defects in mere form, and abolishes special demurrers, therefore now, want of profertin a declaration, cann°f he fatal at any stage of the pleadings, or under any circumstances; and consequently, while in England, it is still an error which may be yet taken advantage of by special demurrer; in Kentucky it is totally immaterial, since the act of 1811, abolishing special demurrers.
And we do not know any good reason why this shoqld not be the case, since the abolition of formaiities in pleading. Proferí of a deed in a declaration is, in its nature, and should (we think) always have been considered more formal than substantial. We know that it has generally been so in practice. Nor do we perceive any mischief or inconvenience which can result from establishing this opinion, as the settled law of the land, for practical pleading.
When profert was deemed substantial, making it, was in practice, generally an. idle ceremony, and craving óyer an useless form of words. The ilmon-strans de fait,” is only a showing, or offering to show, the deed. But the usual practice in modern pleading has been, to insert the profertas a matter of form, and file the deed with the declaration, to be read or copied by the defendant. This effects all the purposes of the antiquated ceremonial of praying in epurt, that the deed be read, and then having it read, *277 before the plea was filed. The only object of granting oyer, is that the defendant may see or hear the deed, before he shall be compelled to plead to the action. This is a privilege which has always been accorded to him, and which has not been, and ought not to be taken away. When profert was material, if the plaintiff omitted it, thd defendant might waive his demurrer, and demand that the deed be shown or read, before he was required to respond to the declaration. In England, when a plaintiff showed, by his count, that he declared on a writing, not under seal, (and of which it was never necessary there, to make profert, because it was a parol contract,) the defendant had a right to demand an inspection of the writing, before he filed his plea. But if, as was generally me case, the declaration did not disclose the fact that the contract was in writing, (which it was not necessary to do, unless it was a specialty,) the defendant could not, as a matter of right, ask for the exhibition of the written evidence. The statute of George If. however, gave the defendant this right too. But this statute never having been in force in this state, a defendant here had, before 1812, the right only of demanding a sight or a copy of the writing sued-on, when it was either a specialty, or was disclosed as the cause of action by the declaration. See I. Tidd’s. Pra. 532.
In a suit on a bond, with a collateral condition, it is not necessary to mention the condition in the declaration. Nevertheless, the defendant may crave oyer of the condition, and cannot be compelled to plead until it shall have' been granted to him. The bond and the condition are distinct, and, therefore, there-may be oyer of one, without the other. I. Saunders, 9, n. 1; Ib. 290. Praying oyer of the bond does not entitle the party to oyer of the condition, and “rice versad VI. Modern, 237; I. Chitty, 416, 19.
When the declaration does not disclose the covenants in the condition of the bond declared on, the defendant is entitled to'a summons against the plaintiff, to show the covenants, and the court will continue the cause until they are shown. I. Tidd's Pra. 534-5.
Def’t. has a neht to oyer, o'fanywriling sued on.
S uit on bond, without setting out condition, def’t. cannot plead performance, without craving oyer of condition.
jjn this state, all executory contracts in writing, are contracts under seal, or of equal dignity and effect to writings. And, therefore, in any suit, on any such contract, whether sealed or not, the declaration must show (he true cause of action, and disclose the writing and the substance of.it, or as much of it as may be necessary to the action of the plaintiff. Consequently, according to the authorities cited, in every such suit on a waiting, the defendant has a right to oyer, or to an inspection of the writing, whether pro-fert be made of if or not, and cannot be forced into trial until, it shall have been shown, unless some legal excuse for not showing it can be oííéred, as that it is impounded.
It cannot be material, therefore, for the plaintiff to offer, to shew the writing, set out in his declaration, when, whether he makes the tender or not, the defendant has a right to see it. And surely, the defendant cannot be prejudiced by any omission of profert, by the plaintiff. There may be some comity in voluntarily tendering to the defendant, his bond forexam-ination; but if this courtesy be withheld, still the defendant may demand, and has as much right to see it, as if it bad been ever so freely, or politely offered.
If a suit be brought on a bond, with a condition, and no profert be made of the condition, the defendant cannot plead performance, without craving oyer of the condition. Strange, 227. The U. S. vs. Arthur, V. Cranch, 261.
It is thus shewn, that oyer may be demanded of that, of which profert has hot been made; and that the only difference betwixt making, or omitting profert in a declaration, is that when it is made, the defendant cannot plead to the deed, without oyer of it; and when omitted, he cannot be compelled to plead, until the deed be shewn to him.
The declaration in this case, is therefore, good.
It is not proper here, to decide, whether profert be ^till as essential in a plea, as it was anciently
But it may be observed, that the main reasons, which apply to declarations, do not, necessarily, extend to pleas. Since the statute of Anne, it was de-. *279 cided by Ch. J. Holt, in Armit. vs. Bream, II. Salk. 498, that when a man covenants to make a deed, and 'is sued tor not doing it, be must,notwithstanding statute, shew the deed in his plea of tender, or performance; otherwise, a general demurrer may be sustained io the plea.
The reason of this is, that without seeing th'e deed, the court cannot decide, whether the tender or1 performance was good.
The pleas in this case will next be considered.
None of the pleas, to which demurrers were sustained, are good. The 1st. 2d. 7th. 8th. and 9th., are in. substance, and legal effect, the same. They rely on the covenant, repeated in various forms, that the record, on which this court adjudicated, when it affirmed the judgment of the circuit court, was not exactly the same on which the supersedeas was ordered. To sustain such pleas, as presenting matter, in. bar of this action, would invert the order of things, and virtually supersede the appellate court. The circuit courts cannot revise, nor correct the opinions of this court; nor can they resist or refuse to carry into effect, its mandates. The correctness and full effect of its opinions, cannot be questioned or qualified, by an inferrior court, in any mode. If this court commit errors, they can be corrected only here. If its opinion, in a particular case, has been produced by the fraud of the successful party, the circuit court cannot inquire into the fraud, and give relief against it, by withholding its aid, to carry the opinion into full effect, as long as it shall remain unchanged. We will not say that the chancellor might not act “inper* sonam,” and coerce the fraudulent party in an aggravated aud extreme case. But the judgment of this court, cannot be averted or resisted by either a common law judge, or a chancellor.
There is no allegation of fraud, except in the ninth plea; and that only charges, that the record was filed by Anderson fraudently. It does not even intimate, that there was any fraud in procuring the opinion, or that the record was not a true and perfect transcript.
The defendants were in court. They brought the case into court, It was their duty to prosecute their *280 writ of error, and see that a true record was filed 5 and it is too late, after the expiration of the term, at which the judgment was affirmed, to object that the record was not correct. Some of the pleas* however, shew that the record was the same, as that* on which the writ of error was sued out, with the addition of some correction, by the circuit court, after the supersedeas was granted. This correction, the court had a right to make. See Shad’s executors vs Haver, I. Monroe, 19; and Short, vs. Coffin’s executors, V. Burrow, 2730; III. Johnson’s Repts., 526. And it has been frequently decreed, that in such cases, the plaintiffs in error, are responsible, as in all other cases, on affirmance.
The 4th. plea, (that the debt had been paid before the orriginal suit was brought,) could certainly, not have been filed, with any hope that it could be sustained. It is too late to plead payment, after a judgment, and an affirmance of it by this court. It could not be pleaded to a suit on the judgement. The payment of the damages, would not bar the action for the amount of the original judgment.
The 10th. plea, (that no supersedeas ever issued) is as ineffectual as either of the others.
The defendants are estopped by their bond. It acknowledges, that a supersedeas had been obtained; The plea does not deny, and therefore, admits that the writ of error was prosecuted, and that the judgment was affirmed. Anderson, therefore, was summoned; and if ( which is not probable) the summons did not notify him, that his judgment had been superseded, the record, which he was bound to take notice of, did. He would have been guility of a contempt, if he had proceeded to enforce his judgment. The plea, is therefore, untrue on its face; and consequently, the demurrer to it was rightly sustained. Lasly vs. Booth, V. Monroe, 380.
It is not alleged that the supersedeas bond, was procured by fraud, or that there was any fraud in obtaining the order for a supersedeas. This could not be, unless the fraud was committed by plaintiffs in error.
’■Autre 'ac-ÍV”1 Pen^enfy able in a batement, except in 1vi íarítr actions?^---'
It only remains to consider the 6th. plea, for overruling the demurrer to which, this, writ of error is prosecutued.
Waiving a decision of the question, whether the pendency of an injunction, is a good plea in any case, to an action at law. (See I. Maddock, 220-2-4. I.Ib. 130; III. Bab. 656; I. Bibb. 473.) It is sufficient in this case, that the plea is inappropriate, and radically defective in substance.
1st. It does not allege that the inj unction is pending.
2d. Or that it had been perpetuated.
3d. Or that the defendants are parties to the suit in chancery.
4th. It shews that the defendants weré not parties.
5th. It only avers, that an injunction had been granted, and does not exclude the inference, that it had also been dissolved. For aught that the plea contains, the injunction was dissolved.
But, unless the injunction had been perpetuated, its pendency, if pleadable at all, could have befen pleaded only in abatement.
uAutre action pendent,” is a good plea, in bar to a popúlar action; or a qui tarn, action, for a penalty; because, by bringing the first suit, the plaintiff'in it, is entitled, exclusively to the penalty; and, consequently, no other person can ever have any right. But ifi ordinary cases, such matter should be pleaded in abatement. I. Chitty, 443; Tidd’s Pra. 583; Embry vs. Hanna, V. Johnson’s Reps. 101; Scott, et al. vs. Coleman, V. Litt. Reps. 349; IV. Ba. Ab. F. 11.
6th. The plea professes to answer the whole declaration, and avers an injunction for only a part of the amount for which the bond was given. This, itself, would be fatal on demurrer. Farquar vs. Collins, III. Marshall, 35; Ralston vs. Bullit, III. Bibb, 261.
Wherefore, it is our opinion that the 6th. plea is insufficient; and, therefore, that -the court erred in overruling the demurrer tó it.
It is objected, that there was no judgment by the court, on the issue of “n»i tiel record.” This is not *282 strange. No issue was tried, and it was not necessary to decide on the plea to the court, until the other , issues, which were in “fieri” were ready for trial.
Petition for a re-hearing.
Dana, and Hanson, for plaintiff; Mills and Triplett, for defendants.
It is also objected, that the demurrer to the repli-, cation, to the 5th plea, was not disposed of. This* too, is immaterial. The replication is as good as the plea; and it is good, whether the plea be good or bad. The defendants cannot be prejudiced by the omission of the court, to give judgment on the demurrer to this replication. If the judgment had been for the defendants, and the plaintiff had failed to reply over, a judgment would have been rendered against him, for his refusal.
The defendants did obtain such a judgment, because the plaintiff refused to reply to the 6th. plea, and, an opinion in their favor, on the demurrer to the replication, would not have placed them in a better condition.
If the court had overruled the demurrer, still the defendants would have obtained their judgment, on the other ground. As the case went off on one demurrer, it was not material whether all the others were disposed of or not.
Judgment reversed, and the cause remanded, with instructions to sustain the demurrer to the 6th. plea,